**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

NEDRA WILSON,

    Plaintiff,

  v.

GREATER LAS VEGAS ASSOCIATION OF REALTORS,

    Defendant.

Case No. 2:14-CV-00362-APG-NJK

**ORDER**

(Dkt. #11)

    Plaintiff Nedra Wilson, an African-American, alleges Defendant Greater Las Vegas Association of Realtors ("GLVAR") terminated her from her position as chief financial officer for an error made by her non-African-American subordinate. Wilson brings claims for employment discrimination under Title VII, Nevada Revised Statutes § 613.330(1), and 42 U.S.C. § 1981. Wilson also asserts claims for various state law torts. GLVAR now moves to dismiss each of Wilson's claims.

**I. Background**

    The following factual recitation is derived from the complaint, which I take as true for purposes of resolving GLVAR's motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). Plaintiff Wilson is an African-American who was employed as GLVAR's chief financial officer from July 2007 until she was terminated on May 7, 2013. (Dkt. #1 at 2-3.) According to Wilson, GLVAR has treated its African-American employees differently than its Caucasian employees. (*Id.* at 3.) Wilson alleges that since Nelson James became GLVAR's chief executive officer, only African-Americans have been terminated from employment and non-African-American employees have not been discharged for similar conduct. (*Id.*) For example, Wilson alleges that her non-African-American subordinate failed to timely and correctly input cash receipts and this error led to Wilson being terminated but the subordinate

was not terminated. (*Id.*)  According to Wilson, no Caucasian supervisor has been terminated for the errors of his or her African-American subordinate. (*Id.*)

Wilson also asserts Caucasian supervisors have engaged in serious misconduct that has resulted in less severe treatment than given to Wilson and other African-American employees. For example, Wilson alleges Irene Vogel, a Caucasian former chief executive officer, paid herself bonuses, entered contracts, and diverted investment payments without the board of directors' approval but she was allowed to voluntarily terminate her employment and take personal leave with full salary and benefits. (*Id.* at 3-4.)  Wilson alleges Dale Henson, a Caucasian chief operating officer, failed to properly manage contracts and negotiated contracts that were unnecessarily costly to GLVAR but he was not reprimanded or terminated. (*Id.* at 4.)  According to Wilson, Michael DellaCamera, a Caucasian IT Director, was not terminated even though he stole GLVAR computers and gave them to family members, wrote a program that failed to capture over $150,000 in revenue, purchased faulty software, paid a friend $29,000 to work on GLVAR's information systems but the system did not work, and failed to keep software up to date. (*Id.* at 4-5.)

In addition to the alleged disparate treatment, Wilson alleges GLVAR supervisors used racially derogatory terms.  Wilson alleges Vogel called her a "fucking nigger" in front of others. Two GLVAR presidents allegedly used the racial slur "nigger" as well, although these latter two comments were not directed at Wilson specifically. (*Id.* at 6-7.)

Based on these allegations, Wilson brought a seven-count complaint asserting employment discrimination based on race under Title VII, Nevada Revised Statutes § 613.330(1), and civil rights violations under 42 U.S.C. § 1981.  Wilson also brings claims for negligent hiring, retention, and supervision; intentional infliction of emotional distress; and interference with prospective economic advantage.  Finally, Wilson asserts a claim for tortious discharge in violation of Nevada public policy.  She alleges that she knew of and objected to deceitful conduct by GLVAR upper management and that she was terminated to prevent her from disclosing the

information and to deter others from challenging upper management's conduct. Defendant GLVAR moves to dismiss each of Wilson's claims.

**II. Discussion**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Nevada Industrial Insurance Act**

GLVAR argues Wilson's claims for negligent retention and supervision, intentional infliction of emotional distress, wrongful interference with prospective economic damage, and tortious discharge in violation of public policy must be dismissed because the NIIA provides the exclusive remedy for her work-related injuries. GLVAR acknowledges an exception from the NIIA exists for intentional torts, but GLVAR contends Wilson has not alleged GLVAR acted with the specific intent to harm her. Wilson responds that intentional torts are not preempted by the NIIA. Wilson contends her claims are intentional torts which Defendant undertook with the purpose of causing her financial and emotional harm. Wilson also argues her negligent supervision claim is a "hybrid" claim alleging both negligence on the employer's part and intentional conduct on the negligently supervised employee's part. She thus argues it is an intentional tort not preempted by the NIIA.

"The NIIA provides the exclusive remedy for employees injured on the job, and an employer is immune from suit by an employee for injuries arising out of and in the course of the employment." *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1031 (Nev. 2005) (quotation omitted). The

1  NIIA's exclusive remedy provision states: "[t]he rights and remedies provided in chapters 616A
2  to 616D, inclusive, of NRS for an employee on account of an injury by accident sustained arising
3  out of and in the course of the employment shall be exclusive . . . ." Nev. Rev. Stat.
4  § 616A.020(1). An injury is defined as "a sudden and tangible happening of a traumatic nature,
5  producing an immediate or prompt result which is established by medical evidence." *Id.*
6  § 616A.265(1). An accident means "an unexpected or unforeseen event happening suddenly and
7  violently, with or without human fault, and producing at the time objective symptoms of an
8  injury." *Id.* § 616A.030.

9  To fall within the NIIA's coverage, an injury must "both arise out of the employment and
10 occur within the course of that employment." *Wood*, 121 P.3d at 1032. An injury arises out of the
11 employment if a causal connection exists between the injury and "the nature of the work or
12 workplace." *Id.* An injury occurs within the course of the employment if it occurs "at work,
13 during working hours, and while the employee is reasonably performing his or her duties." *Id.*

14 The NIIA does not apply to an employer's intentional torts. *Conway v. Circus Circus*
15 *Casinos, Inc.*, 8 P.3d 837, 840 (Nev. 2000). To fall within the intentional tort exception, the
16 employee must allege facts in the complaint showing the employer "deliberately and specifically
17 intended" to injure the employee. *Id.*

18  *1. Negligent Retention and Supervision*

19 Wilson's negligent retention and supervision claim alleges GLVAR owed a duty to ensure
20 its upper management would not intentionally harm her by (1) subjecting her to disparate terms of
21 conditions of employment and (2) "by harassing Ms. Wilson . . . and causing undue stress and ill
22 health . . . ." (Dkt. #1 at 9.) The first part of her negligent retention and supervision claim is not
23 preempted by the NIIA, as it does not allege an injury that is or could be "established by medical
24 evidence." Nev. Rev. Stat. § 616A.265(1). As to the second part of her claim, GLVAR's motion
25 does not address Nevada Revised Statute § 616C.180, which appears to exempt from the NIIA's
26 coverage stress caused by the employee's layoff, termination, or "any disciplinary action taken
27 against him or her." *See also McGrath v. State Dep't of Public Safety*, 159 P.3d 239 (Nev. 2007).
28

Because this statutory section appears to be on point and GLVAR did not address it, I deny GLVAR's motion to dismiss.

### 2. *Intentional Infliction of Emotional Distress*

Wilson's intentional infliction of emotional distress claim alleges that GLVAR's "campaign of discrimination, disparate treatment, and harassment" caused her severe emotional distress. (Dkt. #1 at 10; *see also id.* at 7.) She alleges that as a result she was placed on high blood pressure medication for the first time. (*Id.* at 7.) Similar to Wilson's negligent supervision and retention claim, GLVAR's motion does not address Nevada Revised Statute § 616C.180. I therefore will deny GLVAR's motion to dismiss on this basis.

### 3. *Wrongful Interference with Prospective Economic Advantage*

This claim alleges injuries arising out of Wilson's attempts to find another job after she was terminated. (Dkt. #1 at 11.) Any injury therefore did not occur during the course of Wilson's employment. The NIIA does not preempt this claim.

### 4. *Tortious Discharge in Violation of Public Policy*

Wilson does not allege any "injury" that is or could be "established by medical evidence" in relation to her discharge in violation of public policy. Nev. Rev. Stat. § 616A.265(1). Nor is her tortious discharge claim based on an alleged pattern of discriminatory behavior which potentially caused physical injuries. Rather, she contends she objected to GLVAR upper management's illegal activities and was terminated as a result. The NIIA does not preempt this claim.

**B. Employment Discrimination**

Wilson's first three claims allege employment discrimination based on race under Title VII, Nevada Revised Statutes § 613.330(1), and 42 U.S.C. § 1981. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Nevada Revised Statutes § 613.330(1)(a) makes the same conduct unlawful under state law. Section 1981 provides that "[a]ll persons

within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ."

GLVAR argues I should dismiss these claims for failure to plead a prima facie case of employment discrimination because the Caucasian employees mentioned in Wilson's complaint are not similarly situated to her. Wilson responds that she adequately has alleged a prima facie case and that GLVAR defines similarly situated too narrowly.

The prima facie case under *McDonnell Douglas*[1] "is an evidentiary standard, not a pleading requirement," and the plaintiff need not plead a prima facie case of discrimination to survive dismissal. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). Rather, Wilson must plead only a short and plain statement plausibly alleging employment discrimination. *Sheppard v. David Evans &Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012).

Wilson has met that standard. Wilson alleges GLVAR upper management used racial slurs generally as well as a slur directed specifically at her. She also alleges disparate treatment of African-American and Caucasian employees generally, with specific allegations that Caucasian GLVAR supervisors and employees engaged in misconduct but were given more favorable treatment than Wilson and other African-American employees. Wilson adequately has alleged "an entirely plausible scenario of employment discrimination." *Id.* (quotation omitted). Additionally, whether other employees are similarly situated to the plaintiff "is ordinarily a question of fact." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (quotation omitted). I therefore deny GLVAR's motion to dismiss these claims.

**C. Negligent Hiring, Retention, and Supervision of GLVAR Upper Management**

GLVAR argues the negligent hiring portion of this claim must be dismissed because Wilson pleads no facts that GLVAR hired an employee even though it knew or should have known the employee was unfit for his or her position. As to negligent retention and supervision, GLVAR argues this claim may be brought only by third parties outside the employment relationship. GLVAR also argues Wilson must allege the employees who discriminated against

---

[1] 411 U.S. 792 (1973).

her acted outside the course and scope of their employment.  GLVAR further contends this claim is barred by the availability of statutory remedies under Nevada's anti-discrimination statute.

Wilson responds that this Court routinely permits employees to bring negligent hiring, retention, and supervision claims based on management personnel's handling of employment discrimination.  Wilson contends she adequately has alleged GLVAR upper management employees were not properly hired, trained, and supervised to avoid discriminatory behavior.

An employer has a general duty "to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (quotation omitted).  The employer "breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Id.*  An employer also "has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Id.* at 99.

Wilson has not alleged facts supporting a negligent hiring claim.  She does not allege any facts suggesting GLVAR failed to conduct a reasonable background check on any of the upper management employees, or that it knew or should have known at the time GLVAR hired them that those employees would engage in the alleged discriminatory behavior.  I therefore will grant GLVAR's motion to dismiss the negligent hiring portion of this claim, with leave to amend.

GLVAR's contention that a negligent supervision and retention claim may be brought only by third parties outside the employment relationship is unsupported.  The cases it cites state only that this claim usually is brought by third parties. *See de los Reyes v. Southwest Gas Corp.*, No. 2:07-CV-00068-BES-LRL, 2007 WL 2254717, at *3-4 (D. Nev. Aug. 3, 2007) (stating that usually this claim is based on a third party claim, but dismissing for failure to allege what the employer did wrong and not on the basis that the plaintiff was the defendant's employee); *Hall*, 930 P.2d at 99 (discussing a third party claim but containing no language limiting it to third parties only); *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1181-82 (Nev. 1996) (same).  Absent Nevada authority that a negligent retention and supervision claim is limited only

to third parties outside the employment relationship, I will not dismiss this claim on this basis. Additionally, Wilson need not allege the other employees acted outside the course and scope of their employment. *Rockwell*, 925 P.2d at 1181 n.5 ("When the cause of action is for negligent supervision, as opposed to respondeat superior, it does not matter if the employee's actions occurred within or without his scope of employment.").

Nor is her claim barred by the availability of statutory remedies under Nevada's anti-discrimination statute. The cases GLVAR relies upon state only that a claim for tortious discharge in violation of public policy is barred by the availability of remedies under the anti-discrimination statutes. *See Lund v. J.C. Penney Outlet*, 911 F. Supp. 442, 445 (D. Nev. 1996); *D'Angelo v. Gardner*, 819 P.2d 206, 217-18 (Nev. 1991); *Sands Regent v. Valgardson*, 777 P.2d 898, 899-900 (Nev. 1989). I agree with the analysis in *Burns v. Mayer* that the Nevada Supreme Court would "find that Nevada's anti-discrimination law . . . does not preempt common law tort claims." 175 F. Supp. 2d 1259, 1267 (D. Nev. 2001). Consequently, I will not dismiss this claim on this basis.

### D. Intentional Infliction of Emotional Distress

GLVAR argues Wilson fails to adequately allege severe emotional distress because the only objective indicia of stress is an allegation that Wilson was placed on high blood pressure medication. GLVAR also argues that personnel management decisions are insufficient to support a claim of intentional infliction of emotional distress. GLVAR also contends this claim is barred by the availability of statutory remedies under Nevada's anti-discrimination statute.

Wilson responds that she has alleged outrageous conduct because she alleges GLVAR upper management used racial slurs. Wilson contends she need not allege objective indicia of emotional distress because that is an evidentiary burden at summary judgment rather than a pleading requirement. Wilson argues she nevertheless met that burden by alleging she was placed on high blood pressure medication for the first time as a result of GLVAR's actions.

In Nevada, the elements of a cause of action for intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct with either the intention of, or reckless disregard for,

causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (quoting *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). "Liability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Burns*, 175 F. Supp. 2d at 1268 (quotations omitted).

The tort of intentional infliction of emotional distress may apply in the employment termination context. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 476–77 (Nev. 1995) (per curiam) (finding there were factual issues as to whether retaliatory termination, discontinuation of retirement benefits, pursuit of litigation with express goal of harassment, and verbal threats and attempted assault by member of board of directors was sufficiently extreme and outrageous). However, "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Welder v. Univ. of So. Nev.*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (quotation omitted). "Personnel management consists of such actions as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts." *Id.*

Most of the conduct Wilson alleges consists of personnel management decisions, which do not rise to the level of extreme and outrageous conduct even if motivated by a discriminatory purpose. Additionally, although Wilson alleges Vogel used a racial slur against Wilson, she does not allege that it was the use of this derogatory term that caused her emotional distress. Rather, she alleges it was the "pattern of discrimination and harassment" that led her to be placed on high blood pressure medication. (Dkt. #1 at 7.) I therefore will dismiss this claim, with leave to amend.[2]

---

[2] Although GLVAR argues Wilson fails to adequately allege physical manifestation of severe emotional distress, she alleges her emotional distress led to her being placed on high blood pressure medication for the first time. (Dkt. #1 at 7.) Additionally, I reject GLVAR's argument

**E. Wrongful Interference with Prospective Economic Advantage**

GLVAR argues this claim must be dismissed because Wilson does not allege GLVAR knew she was seeking subsequent employment. Wilson responds that her claim "will be substantially fleshed out in discovery." (Dkt. #12 at 22.) Wilson seeks to learn through discovery whether GVLAR management spoke to prospective employers and what information, if any, GLVAR conveyed to them.

To establish the tort of wrongful interference with prospective economic advantage, a plaintiff must allege: "1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct." *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987). Wilson fails to allege facts supporting the elements of a wrongful interference claim, and she cannot rely on the hope that she will uncover facts supporting her claims through discovery. I therefore will dismiss this claim, with leave to amend.

**F. Tortious Discharge**

GLVAR moves to dismiss this claim because Wilson has not identified a cognizable public policy that her discharge violates. Wilson responds that she has alleged she was terminated for refusing to acquiesce in what she believed to be illegal activities by GLVAR upper management. She contends she was fired to prevent her from bringing this wrongdoing to light.

Nevada law recognizes that "although an employer is free to dismiss an at-will employee under almost any circumstances, an employer is not entitled to dismiss an employee for a reason that contravenes public policy." *Bigelow v. Bullard*, 901 P.2d 630, 631-32 (Nev. 1995). Public policy tortious discharge arises in "rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent*, 777 P.2d at 900. To establish such

---

that this claim is barred by the availability of statutory remedies under Nevada's anti-discrimination statute for the same reasons already discussed with respect to Wilson's negligent retention and supervision claim.

a claim, the plaintiff must show "the dismissal was based upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors (such as, say, performing jury duty or applying for industrial insurance benefits)." *Bigelow*, 901 P.2d at 632.  This may include allegations the employee "was terminated for refusing to engage in conduct that he, in good faith, reasonably believed to be illegal." *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1068 (Nev. 1998).

"[W]histleblowing activity which serves a public purpose should be protected." *Wiltsie v. Baby Grand Corp.*, 774 P.2d 432, 433 (Nev. 1989).  However, to support a public policy tortious discharge claim, the employee's conduct must "seek to further the public good" rather than be "merely private or proprietary." *Id.*  Consequently, reporting alleged illegal or unsafe activity to a supervisor, as opposed to the "appropriate authorities," will not suffice. *Id.*  Nor will merely expressing "disapproval of company policies to a third person." *Bigelow*, 901 P.2d at 635.

Here, Wilson alleges various improprieties on the part of GLVAR upper management, including election fraud to retain control of the Board of Directors and paying unauthorized compensation to themselves. (Dkt. #1 at 12.)  Wilson alleges she knew of this conduct and "specifically and repeatedly stated her objection to this pattern and practice of deceit . . . ." (*Id.*)  According to Wilson, she was terminated both to prevent her from disclosing management's activities to the GLVAR membership and to dissuade others from doing so. (*Id.* at 12-13.)

Wilson's allegations fail to allege a public policy tortious discharge.  Wilson does not allege she was asked to participate in illegal conduct and refused.  Although she has alleged she was discharged for objecting to potentially illegal activity, she has not alleged she reported the misconduct to the appropriate authorities.  It is unclear from the complaint to whom Wilson objected.  It also is unclear about what she objected because she references incompetent behavior in addition to potentially illegal behavior. (*Id.* at 12 (alleging incompetence led to rising membership fees).)  I therefore will dismiss this claim, with leave to amend.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (Dkt. #11) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that plaintiff Nedra Wilson may file an amended complaint on or before March 23, 2015, correcting the identified deficiencies if sufficient facts exist.

DATED this 9th day of March, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE