**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| NEDRA WILSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GREATER LAS VEGAS ASSOCIATION OF REALTORS,<br><br>　　　　Defendant. | Case No. 2:14-cv-00362-JAD-NJK<br><br>**ORDER GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DEFENDANT'S COUNTERCLAIMS**<br><br>(ECF No. 104) |

Plaintiff Nedra Wilson worked for defendant Greater Las Vegas Association of Realtors (GLVAR) as chief financial officer. After she was fired, she filed this lawsuit against GLVAR, alleging race discrimination and negligent supervision and training. In response, GLVAR filed counterclaims against Wilson for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conspiracy, conversion, business disparagement, and constructive fraud. ECF No. 54.

Wilson moves for summary judgment on the counterclaims. As to the two contract-based claims, Wilson argues there is no contract between the parties that would allow for GLVAR to recover damages for a breach. Wilson also argues that even if a contract existed, GLVAR cannot show that Wilson breached the contract or that GLVAR suffered damages. As to the breach-of-fiduciary-duty claim, Wilson argues that she did not breach a duty of loyalty to GLVAR because there is no evidence that she engaged in self-dealing. She also asserts there is no evidence to support GLVAR's conspiracy, conversion, business disparagement, and constructive fraud claims.

GLVAR responds that the at-will employment relationship, along with GLVAR's confidentiality policies in an employee handbook, an electronic-media use form, and a confidentiality agreement, were contracts between the parties. GLVAR contends that Wilson

breached those agreements by disclosing confidential information to GLVAR members who were not members of the board or employees.[1] GLVAR argues that it suffered damages in the form of attorney's fees it incurred when GLVAR was sued by some of its members who used that information to support their lawsuit. GLVAR contends that the good faith and fair dealing claim should survive because a reasonable jury could find that Wilson technically complied with the confidentiality agreement's terms but breached its spirit and purpose. As to the breach of fiduciary duty claim, GLVAR argues that Wilson owed a fiduciary duty as chief financial officer and as an employee to not disclose or misuse her employer's confidential information. As to the rest of its claims, GLVAR contends that Wilson did not meet her initial burden under Federal Rule of Civil Procedure 56 to show no genuine issues of fact remain.

The parties are familiar with the facts of this case and I will not repeat them in detail here. I grant Wilson's motion in full because GLVAR has not presented sufficient evidence in support of the material elements of its claims.

**I. ANALYSIS**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

---

[1] GLVAR is a member-based association where individuals can be members but are not necessarily employees or members of the board of directors. ECF No. 104-1 at 150.

2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing

Wilson argues that there is no contract between the parties. She also argues that GLVAR cannot show a breach or that it suffered damages. GLVAR responds that the parties were in an at-will employment relationship that Nevada treats as contractual. GLVAR also argues that various documents, such as the employee handbook, its confidentiality policies, and a confidentiality agreement constitute contracts. GLVAR claims that Wilson breached those agreements by providing confidential information to GLVAR members who were not employees or members of the GLVAR board. According to GLVAR, it suffered damages when those members used that information to sue GLVAR.

A breach-of-contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011) (quotation omitted). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Under Nevada law, an at-will employment agreement is a contract. *D'Angelo v. Gardner*, 819 P.2d 206, 211-12 (Nev. 1991) ("Employment contracts are ordinarily and presumably contracts which are terminable at will . . . .") (emphasis omitted).

Additionally, Nevada law implies a covenant of good faith and fair dealing in "*all* contracts." *A.C. Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 10 (Nev. 1989) (emphasis in original). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). Alternatively phrased, "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who

does not act in good faith." *Id.* at 923. Whether the alleged breaching party's "actions fall outside the reasonable expectations of the [other] party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 924. Whether a party acted in good faith is a question of fact. *A.C. Shaw Const., Inc.*, 784 P.2d at 11.

Here, Wilson was GLVAR's chief financial officer for several years. Under Nevada law, the at-will employment relationship is contractual. *See Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 105-06 (Nev. 2008) (en banc); *D'Angelo v. Gardner*, 819 P.2d at 211-12. GLVAR therefore has presented evidence of a valid contract between the parties. However, the employee handbook (and the electronic media use and confidentiality policies contained therein) are not contracts, nor are they terms of Wilson's at-will employment contract, because those documents state unequivocally that they are not contracts. *See, e.g.*, ECF Nos. 104-7; 104-10; 105-8; 105-9; 113-21; 113-22.

The only contract governing confidentiality between the parties is the April 15, 2009, Confidentiality Agreement, signed less than a month before Wilson was terminated. ECF No. 104-6. That agreement states that Wilson is a member of the investment committee, but she was not a member of that committee. *Id.*; ECF 104-1 at 197. The agreement provides that Wilson "acknowledges and agrees that some information produced and discussed during Committee and/or Board of Directors meetings is Confidential Information. Confidential Information is any information that is learned in such a meeting that is not generally publicly disclosed." ECF No. 104-6. Under the agreement, the confidentiality obligations survive "beyond Member's Committee Membership for a period of two (2) years after the Member's Committee Membership ends." *Id.* Given that Wilson was not a member of the Investment Committee, it is doubtful that she could have breached this contract by revealing information she learned as a member of that committee.

But even assuming she could breach the contract or the implied covenant of good faith and fair dealing by revealing confidential GLVAR information, GLVAR has not presented evidence from which a reasonable jury could find that Wilson did so or that GLVAR suffered

damages as a result. GLVAR contends that Wilson shared confidential information with three GLVAR members (Kevin Child, Jackie Porter, and Honey Borla) who used that information to file a lawsuit against GLVAR. GLVAR contends that Wilson met with the attorney for Child, Porter, and Borla (Matt Callister) and Child later told GLVAR CEO Michele Caprio that Wilson provided them with information that assisted their lawsuit.

Wilson admits that she met with Child and attorney Matt Callister after she was fired to see if Callister would represent her in her anticipated lawsuit against GLVAR. ECF No. 104-1 at 161. But she denies she provided any documents to Callister, Child, Porter, or Borla. *Id.* at 179, 181. She also met with Porter and Borla prior to her termination to review GLVAR financial information, but she testified that she spoke to these two at former GLVAR CEO Irene Vogel's direction. *Id.* at 160, 165, 172.[2] It is undisputed that GLVAR members are entitled to certain GLVAR financial information, including annual financial-audit information. *See id.*; ECF No. 104-2 at 81.

A November 2012 news article revealed that Porter had obtained at least some of the information supporting the lawsuit from reviewing financial information while Porter was a board member. *See* ECF No. 113-25 (news article reporting that when Porter was on the board, she saw financial information that was "skewed," including a $4,000 payment to a dental office paid by the association). That same article reported that many of the issues that Wilson had brought to the board's attention internally was discussed by former GLVAR treasurer Kathryn Bovard at an open session of GLVAR's board meeting. *Id.* (reporting that Bovard raised questions about a $40,000 bonus given to Vogel without proper authority, a proposed $30,000 travel fund, iPads for board members, and "other finances").

---

[2] Wilson testified that prior to leaving GLVAR, she spoke to former GLVAR presidents Joanne Levy, Lee Barrett, and Donna Ruthe, and told them about some of the internal issues within GLVAR even though these three were not members of the board at the time she spoke with them. ECF No. 104-1 at 171–73. GLVAR presents no evidence that this information found its way to Child, Porter, Borla, or Callister. Consequently, even if Wilson breached her obligations by revealing this information, GLVAR presents no evidence of resulting damages.

GLVAR CEO Michele Caprio testified that Child told her he obtained confidential information from Wilson, including that GLVAR overcharged brokers. ECF No. 104-2 at 9, 79-80. However, at the time Caprio spoke with Child, the overcharge issue was generally known because GLVAR was issuing refunds. *Id.* at 81. Caprio could not identify any particular information or documents Wilson shared with the members who filed suit. ECF No. 104-3 at 46. Caprio based her opinion that Wilson shared information on what Child told her. *Id.* Caprio admitted she was speculating about whether Wilson provided any information to Child. *Id.* at 47; *see also* ECF No. 112-4 at 91-92 (former CEO Nelson Janes also testifying he did not know if Wilson shared information with the three members who were suing GLVAR). The parties do not present Child's testimony on the subject.

This evidence is insufficient to raise a genuine dispute that Wilson provided confidential information to GLVAR members. GLVAR has not produced any evidence about what confidential information Wilson provided, and there is evidence that GLVAR internal financial information was being discussed in open fora or discovered through financial-audit information to which the members were entitled.

Additionally, because GLVAR cannot show what information Wilson provided, it cannot trace any damages to the alleged breach. Instead, GLVAR contends that the entirety of its legal fees incurred in the Child/Porter/Borla lawsuit are damages. But GLVAR presents no evidence that any fees were incurred as a result of any particular information Wilson provided. Instead, the November 2012 news article suggests that information was obtained through other sources. And the lawsuit was filed almost a year before Wilson was fired and then met with Callister. Consequently, GLVAR's attempt to pin the entirety of its legal fees on Wilson does not correspond with the timing of when the lawsuit was filed versus when Wilson allegedly provided information to Child. I therefore grant Wilson's motion for summary judgment on GLVAR's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

/ / / /

/ / / /

**B. Breach of Fiduciary Duty**

Under Nevada law, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008). A "corporate officer or director stands as a fiduciary to the corporation." *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224 (Nev. 1987).

Nevada courts tend to follow the Restatement of Agency, which states that an employee owes a duty of loyalty to act solely in the interests of her employer within the business area for which she is employed. Restatement (Second) of Agency § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."); *White Cap Indus., Inc. v. Ruppert*, 67 P.3d 318, 319 (Nev. 2003) (following the Restatement (Second) of Agency § 381 and finding no breach of the duty of loyalty by failing to disclose another employee's preparations to compete with their employer). This district has concluded that employees, even those who are not officers or directors, owe a duty of loyalty. *See New England Life Ins. Co. v. Lee*, No. 2:14-CV-01797-JCM-NJK, 2015 WL 1413391, at *6 (D. Nev. Mar. 27, 2015); *Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co.*, No. 2:10-CV-00288-RLH-PAL, 2010 WL 2541729, at *2 (D. Nev. June 17, 2010).

For the same reasons discussed above, I grant Wilson's motion on this claim. Assuming Wilson's alleged act of providing confidential information to members could constitute a breach of fiduciary duty, GLVAR has not presented evidence raising a genuine dispute that she actually did so and that the information she provided (which GLVAR cannot identify) caused GLVAR damages.

**C. Civil Conspiracy**

Wilson moves for summary judgment on this claim, arguing that there is no evidence she acted in concert with Child for an unlawful objective. GLVAR's only response is that Wilson has not met her initial burden under Rule 56 of establishing the absence of a genuine issue of fact.

Under Rule 56, the moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. But with respect to an issue on which the nonmoving party bears the burden of proof, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1261 (9th Cir. 2016) ("Because the plaintiff bears the burden of proof at trial on this factor, a defendant moving for summary judgment must either produce evidence establishing that the plaintiff spoke as a public employee or show, through argument, that the plaintiff does not have enough evidence to establish that she spoke as a private citizen."); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."). Once the moving party meets that burden, then the burden "shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

GLVAR thus is incorrect that Wilson did not meet her initial burden. Wilson met that burden by pointing to an absence of material facts supporting essential elements of GLVAR's conspiracy claim. GLVAR does not point to evidence in the record supporting a genuine dispute of fact in support of this claim. I therefore grant Wilson's motion on this claim. Moreover, as discussed above, no reasonable jury could find that Wilson provided Child with information resulting in damages to GLVAR. Because GLVAR points to no other evidence of agreement or damages, this claim fails as a matter of law. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) ("An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." (quotation omitted)).

### D. Conversion

Wilson moves for summary judgment on this claim, arguing that there is no evidence that Wilson deprived GLVAR of its property or that she improperly provided GLVAR documents to members. GLVAR's only response is that Wilson has not met her initial burden under Rule 56 to establish the absence of a genuine issue of fact.

As with the conspiracy claim, Wilson has met her initial burden by asserting a lack of evidence supporting material elements of GLVAR's conversion claim. *See M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542 (Nev. 2008) (stating that conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights" (quotation omitted)). GLVAR does not point to evidence supporting its claim. I therefore grant Wilson's motion on this claim.

### E. Business Disparagement

Wilson argues that her statements that GLVAR was illegally charging excess broker fees is a non-actionable opinion and that GLVAR cannot establish damages. GLVAR's only response is that Wilson has not met her initial burden under Rule 56 of establishing the absence of a genuine issue of fact.

As with the conspiracy and conversion claims, Wilson has met her initial burden by asserting a lack of evidence supporting material elements of GLVAR's business disparagement claim. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009) (listing elements of a claim for business disparagement as: "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages" (footnote omitted)). GLVAR does not point to evidence supporting its claim. I therefore grant Wilson's motion on this claim.

### F. Constructive Fraud

Wilson argues that there is no evidence she engaged in fraudulent or deceitful behavior to support a constructive fraud claim. GLVAR's only response is that Wilson has not met her initial burden under Rule 56 of establishing the absence of a genuine issue of fact.

As with the conspiracy, conversion, and business-disparagement claims, Wilson has met her initial burden by asserting a lack of evidence supporting material elements of GLVAR's constructive-fraud claim. *See Perry v. Jordan*, 900 P.2d 335, 337 (Nev. 1995) ("[C]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence." (quotation omitted)). GLVAR does not point to evidence supporting its claim. I therefore grant Wilson's motion on this claim.

## II. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Nedra Wilson's motion for summary judgment **(ECF No. 104) is GRANTED**.

DATED this 21st day of August, 2017.

JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE