**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| NEDRA WILSON, | Case No. 2:14-cv-00362-JAD-NJK |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| GREATER LAS VEGAS ASSOCIATION OF REALTORS, | |
| Defendant. | (ECF No. 105) |

Plaintiff Nedra Wilson worked for defendant Greater Las Vegas Association of Realtors (GLVAR) as chief financial officer. After she was fired, she filed this lawsuit against GLVAR, alleging race discrimination and negligent supervision and training. GLVAR moves for summary judgment on Wilson's remaining claims,[1] arguing that there is no evidence of discrimination and that she was fired for a legitimate reason following her mistakes that led to an increased tax liability for the association. GLVAR also argues there is no evidence it negligently retained or supervised its employees.

The parties are familiar with the facts of this case and I will not repeat them in detail here. I deny GLVAR's motion as to Wilson's race-discrimination claims because genuine disputes remain about whether Wilson was treated differently than a similarly situated white employee. I grant the motion as to Wilson's negligent-supervision-and-retention claim because there is no evidence that GLVAR negligently supervised or retained the chief executive officer who fired her.

---

[1] The court previously dismissed the negligent-hiring portion of Wilson's claim for negligent hiring, supervision, and retention. ECF No. 27. The court also dismissed her claims for intentional infliction of emotional distress, wrongful interference with prospective economic advantage, and tortious discharge. *Id.*

# I. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## A. Discrimination

GLVAR moves for summary judgment on Wilson's race-discrimination claims, arguing that Wilson cannot establish a prima facie case of retaliation because she cannot show similarly situated employees outside of her protected class were treated differently. GLVAR also contends that it has offered a legitimate, non-discriminatory reason for Wilson's termination and she cannot show pretext.[2]

Wilson responds that she has shown that white employees who made errors costing the association money were not disciplined or fired but she was fired for her white subordinate's

---

[2] GLVAR also argues that any acts prior to July 20, 2012, are untimely because Wilson did not file a charge of discrimination until May 16, 2013. Wilson's claim is based on her May 2013 termination, so it is timely. Wilson does not present evidence of any other discriminatory act resulting in damages between July 20, 2012, and her termination in May 2013. Instead, Wilson refers to incidents prior to July 2012 to give context to her claim and as part of her argument regarding which employees were similarly situated to her but treated differently.

mistake. She also argues this evidence must be considered in light of evidence that GLVAR historically has tolerated the use of racial slurs by senior management.

Wilson's race-discrimination claims arise under Title VII, Nevada Revised Statutes § 613.330, and 42 U.S.C. § 1981. These three claims are governed by a similar legal framework, so I will analyze all three under Title VII law. *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006); *Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977-78 (Nev. 1980).

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of [her] race . . . ." 42 U.S.C. § 2000e-2(a)(1). In a Title VII case, the plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1155 (9th Cir. 2010). A plaintiff may establish a prima facie case by showing: (1) she is a member of a protected class; (2) she was qualified for her position and performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) "similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id.* at 1156 (quotation omitted).

If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 1155. If the defendant does so, then the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reasons were "a mere pretext for unlawful discrimination." *Id.*

The plaintiff may prove discriminatory intent through direct or circumstantial evidence. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003). Discriminatory intent can be shown, for example, by "showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Id.* (quotation omitted).

Wilson satisfies the first three elements of a prima facie case. She is a member of a protected class because she is African-American. She has presented evidence that she was qualified for her position and performing her job satisfactorily because she held the position for

many years and received two pay increases in the year preceding her termination. *See* ECF Nos. 105-15; 105-16. It is undisputed she experienced an adverse employment action when she was terminated on May 7, 2013. ECF No. 105-22. The parties' dispute centers on whether Wilson has shown either that similarly situated individuals outside her protected class were treated more favorably or that other circumstances surrounding her termination give rise to an inference of discrimination.

Individuals are similarly situated "when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). The similarly situated inquiry "is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees because one can always find distinctions in performance histories or the nature of the alleged transgressions." *Id.* at 1115 (quotation omitted). Thus, the "employees need not be identical, but must be similar in material respects." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011). Whether other employees are similarly situated to the plaintiff is a question of fact and "what facts are material will vary depending on the case." *Hawn*, 615 F.3d at 1157. For example, the presence or absence of a shared supervisor might be relevant in some cases but not others (such as where there are different supervisors but a shared final decision maker). *Hawn*, 615 F.3d at 1157.

There is no direct evidence of race discrimination in GLVAR's decision to terminate Wilson. Wilson never heard a racial slur used while she was employed at GLVAR. ECF No. 104-1 at 70. Wilson has presented evidence that some GLVAR employees used racial epithets outside of her presence. For example, someone told Wilson that Noah Herrera, who was going to be GLVAR's incoming president in 2013, made racially charged statements at a company function; that another employee, Paul Bell, used racial slurs regularly; and that former CEO Vogel called Wilson the "n word" once when Wilson was not there. *Id.* at 148–50, 153. However, Herrera did not become the president. *See* ECF No. 112-4 at 52–53 (CEO Nelson Janes heard that Herrera had used a racial slur and Janes encouraged him to resign as a member of the board of directors, which he did). And there is no evidence Herrera, Bell, or Vogel had any input

into the decision to terminate Wilson's employment. Rather, Janes, who was the CEO at the time Wilson was terminated, made the decision to fire her. ECF No. 104-3 at 21.

As circumstantial evidence, Wilson argues that GLVAR changed the reasons for her termination, one of her alleged deficiencies was actually a white employee's responsibility (and he was not fired as a result), and she was treated differently than similarly situated white employees. Janes terminated Wilson on May 7, 2013. According to GLVAR, Wilson was fired for two accounting errors that resulted in greater than estimated tax liability for GLVAR which, given her position as CFO, rendered her performance unacceptable. Each December, GLVAR tried to estimate its tax liability so it could take measures to reduce that liability by year end. ECF No. 104-3 at 22–23. Wilson had estimated a certain tax liability for 2012, but when she did so, that estimate did not account for over $400,000 in cash receipts that Wilson's white subordinate had not booked into one of the accounting software programs. ECF No. 104-1 at 75, 95. By the time Wilson discovered the error, it was too late to take action to avoid the tax liability. ECF No. 104-3 at 22–23. Additionally, Wilson double booked rebates given to members. *Id.* at 29. Once corrected, this error also led to tax liability greater than was estimated. *Id.*; *see also* ECF No. 105-19 (memo from Janes to Wilson stating the auditors had identified two serious issues: (1) that rebates to members were booked twice and (2) that depreciation software was not working, which resulted in incorrect balances for fixed assets). These errors resulted in an unanticipated tax liability of $100,000. ECF No. 113-15. Wilson admitted these errors were her responsibility as CFO. ECF Nos. 104-1 at 87; 113-15.

According to Wilson, at her termination meeting she was told that the reason she was being fired was the mistake in accounts receivable. ECF No. 104-1 at 111. She responded that it was her employee who had made the error by not timely posting the cash receipts. *Id.* Janes then told her there was a problem with depreciation being accurately captured. *Id.* Wilson responded that the problem was the result of software that did not work but that it was not a significant problem because the outside certified public accounting firm was capturing depreciation on its system. *Id.* Janes then stated that Wilson did not upgrade some of the accounting software, but

Wilson claimed she was not responsible for that because she was not the IT director and she did not have the necessary password to accomplish that task. *Id.*

Although Wilson acknowledges that she was responsible for accounting errors that led to a greater than anticipated tax liability, Wilson asserts that she was treated differently than similarly situated white employees who were not fired for similar errors. For example, Wilson argues that her subordinate who failed to post the cash deposits was not fired. However, Wilson is not similarly situated to her subordinate. Supervisory employees typically are not considered similarly situated to those they supervise. *Vasquez*, 349 F.3d at 641 ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."). Moreover, Wilson could have disciplined her subordinate for the mistake, and she did so by giving a verbal warning. ECF No. 104-1 at 82–83.

Wilson next argues that she was similarly situated to former CEO Vogel, who Wilson argues was allowed to retire with a handsome severance package rather than be fired despite multiple allegations of misconduct. Even if true, the decision on how to handle Vogel's departure was not made by Janes and there is no evidence that anyone involved in the Vogel decision had input into Wilson's termination. Different supervisory authorities may have divergent views about what constitutes misconduct and what rises to the level of an offense worthy of termination, and thus the disparity in treatment by two different supervisors does not give rise to an inference of discrimination. There is no evidence that GLVAR had objective criteria that all supervisors were directed to follow when determining whether to discipline or what level of discipline was appropriate for certain types of misconduct or errors. Consequently, Wilson was not similarly situated to Vogel in material respects.

Wilson also argues membership director Krista Baker-Pantuso (who is white) was not terminated for recordkeeping mistakes her subordinate made and instead the subordinate (who is African-American) was fired. Wilson has not shown that Baker-Pantuso is similarly situated in all material respects because Wilson admitted to errors while Baker-Pantuso did not. Additionally, the amount involved in the Baker-Pantuso situation was substantially less. *See* ECF

No. 112-5 at 66–67 (approximately $15,000 or less). Wilson thus has not shown that Baker-Pantuso's conduct was comparably serious to her own. Finally, Wilson does not know the results of the internal investigation into the Baker-Pantuso matter. ECF No. 104-1 at 106. Consequently, she does not know whether Baker-Pantuso made any errors worthy of discipline or whether she was disciplined in some fashion in relation to this incident.

Wilson next identifies Dale Henson, who allegedly cost the association money by failing to properly manage contracts. *See id.* at 123–24. However, Henson's alleged misconduct occurred in 2008 and 2009, while Vogel was CEO. *Id.* at 124. Wilson thus is not similarly situated to Henson because Wilson was terminated by Janes, not Vogel. Moreover, Wilson does not know whether Vogel disciplined Henson for his alleged misconduct. *Id.*

Finally, Wilson identifies IT director Michael Della Camera (who is white). Most of the allegations of Della Camera's misdeeds arose during Vogel's tenure as CEO and thus do not support a finding that Wilson and Della Camera were similarly situated with respect to those actions. *See id.* at 21–28, 97–103. However, Wilson has identified two issues that occurred during Janes' tenure for which Della Camera was not fired. First, Wilson avers that one of the reasons Janes gave for firing her was her failure to update accounting software called "Great Plains." But she testified that was Della Camera's responsibility and that she did not even have the necessary password to perform that task. *Id.* at 111. Wilson also testified that Della Camera failed to keep software licensing up-to-date, resulting in costs of over $80,000 to GLVAR. *Id.* at 53, 99, 134–35.[3]

---

[3] GLVAR contends that I should not credit Wilson's deposition testimony or her affidavit because she testified to things about which she would not have personal knowledge. However, Wilson states in her affidavit that she had personal knowledge as GLVAR's CFO. It is likely that a CFO would know about an $86,000 expense for software. Additionally, Wilson would know whether maintenance of the accounting software system fell within her job responsibilities and whether she had the requisite password to update it. Nor is it far-fetched that an IT director would be responsible for updating software. GLVAR has known from the outset who Wilson identified as similarly situated and what errors she alleges those employees made for which they were not fired. *See* ECF No. 1 at 3–6. She also detailed those same errors in her deposition. If Wilson was incorrect about any of these statements, GLVAR had ample opportunity to rebut them with evidence, both in its motion and reply.

Viewing the evidence in the light most favorable to Wilson, a reasonable jury could find that she was similarly situated to Della Camera but was treated differently. As an initial matter, I reject GLVAR's argument that as a matter of law Wilson and Della Camera were not similarly situated because Wilson was CFO with responsibilities over financial affairs while Della Camera was in charge of IT. The similarly situated inquiry cannot be so narrowly construed. Adopting GLVAR's position would mean, in effect, that Wilson could not be similarly situated to any other employee because she was the only CFO. That cannot be the proper analysis. Rather, what matters is whether the two are similarly situated in material respects given the context of the organization and the facts of this case.

Both were heads of departments who directly reported to the same supervisor, Janes. Both allegedly committed errors under Janes's watch resulting in comparable monetary costs to the association. One reason given for Wilson's termination was a matter that fell within Della Camera's responsibilities, not hers. Yet Wilson was fired and Della Camera was not. Whether the two are similarly situated is a question of fact for the jury, as is the question of whether the disparate treatment was the result of race discrimination.

GLVAR notes that where the same actor is responsible for both approving raises and then firing the plaintiff within a short period of time, "a strong inference arises that there was no discriminatory motive." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir. 2012) (quotation omitted). "The same-actor inference is a strong inference that a court must take into account on a summary judgment motion." *Id.* (quotation omitted). Within the year before Janes fired Wilson, he approved two raises for her. ECF Nos. 105-15; 105-16. However, Wilson avers that around the same time Janes gave her an eighteen percent raise, he gave thirty percent raises to two white directors who, like Wilson, directly reported to Janes. ECF No. 112-6 at 7. GLVAR does not rebut Wilson's statements, which were made under oath, nor provide any other context for the disparity in the raises. Under these facts, the presumption is weakened.

GLVAR also argues that a white employee who later performed similar job duties as Wilson was fired for an accounting error. However, that employee was fired during CEO

Michele Caprio's tenure, not Janes's. ECF No. 112-2 at 49-53.  GLVAR has argued (and I agree) that employees who engaged in misconduct under CEO Vogel are not similarly situated to employees who engaged in misconduct under CEO Janes.  But that also means that the white finance director who was fired under Caprio is not similarly situated to Wilson, who was fired by Janes.

GLVAR has presented a legitimate, non-discriminatory reason for Wilson's termination based on her errors that resulted in unexpected tax liability.  Consequently, the presumption of discrimination established by the prima facie case "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  Wilson bears the burden of proving that GLVAR's proffered reasons were a pretext for discrimination. *Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138, 1148 (9th Cir. 2006).  She can do so "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable," or "directly, by showing that unlawful discrimination more likely motivated the employer." *Id.* (quotation omitted).  "Although the inference of discrimination created from the prima facie case is gone, the evidence used in its establishment may be considered for examining pretext." *Id.*

The evidence that Wilson presented in support of her prima facie case meets this burden.  Wilson has presented evidence from which a reasonable jury could find that GLVAR treated her differently than a white employee who made a mistake of a similar magnitude under the same supervisor.  A jury also could find that at least one of the reasons given for her termination was false because GLVAR attributed a mistake to her that was the fault of that same white employee and fell within his job responsibilities (indeed, she lacked the password needed to fix the error).  Yet Wilson was fired and Della Camera was not.

Wilson's case is not a strong one.  GLVAR has presented evidence that Janes gave Wilson two raises and did not terminate her until after she admittedly made mistakes that led to an unanticipated six-figure tax liability.  A jury may find that storyline compelling, particularly because there is no evidence that Janes made any racial comments.  But at summary judgment, I

do not make credibility findings or factual determinations. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034 (9th Cir. 2006) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." (quotation omitted)). Because a reasonable jury could find Wilson and Della Camera were similarly situated but treated differently and GLVAR gave a false explanation for one of the given reasons for her termination, I deny GLVAR's motion for summary judgment on the discrimination claims.

### B. Negligent Supervision and Retention

GLVAR argues that Wilson cannot show intentional race discrimination and therefore she cannot show that GLVAR negligently retained and supervised its employees. GLVAR also argues that it had anti-discrimination policies and provided anti-discrimination training, so it acted reasonably to prevent discrimination by its employees. Wilson responds that she has presented evidence that GLVAR did not manage its personnel to avoid racial discrimination.

"To prevail on a negligence theory, a plaintiff generally must show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 724 (Nev. 2009) (en banc) (quotation omitted). An employer "has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

I grant GLVAR's summary judgment motion on this claim because there is no evidence that GLVAR negligently failed to train, supervise, or retain Janes. Janes had extensive training in the areas of workplace diversity, equal employment opportunity, and anti-discrimination prior to joining GLVAR. ECF No. 112-4 at 55-56. GLVAR has adopted anti-discrimination policies. ECF Nos. 105-5; 105-6. There is no evidence that Janes ever used racially charged language that might suggest to GLVAR that it needed to further train or supervise him, or to fire him. To the

contrary, Janes discouraged Herrera from becoming president after learning that Herrera had used a racial epithet at an association function. To the extent this claim is based on GLVAR's failure to supervise or train other employees who used racial epithets, Wilson does not present evidence that she heard those slurs or that she suffered damages as a result of GLVAR's alleged negligence in not addressing those employees' misconduct.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant Greater Las Vegas Association of Realtors' motion for summary judgment **(ECF No. 105) is GRANTED in part and DENIED in part**. I grant the motion as to plaintiff Nedra Wilson's negligent-supervision-and-retention claim. I deny the motion as to plaintiff Nedra Wilson's race-discrimination claims.

DATED this 21st day of August, 2017.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE